THOMAS M. TUCKER *v.* J. BURRIS—J. BURRIS *v.* J. TUCKER—J. BURRIS *v.* T. M. TUCKER—*Consolidated.*

Where the proper officers of the land department have ordered the survey of a confirmed grant, after holding up the claim for many years, on the ground of a suspicion of its being fraudulent and forged, such objection to the title cannot be raised afterwards by an adverse claimant.

It is not necessary to trace such a title to the original claimant ; if it is traced to the confirmee, whose existence is not contested, it suffices.

APPEAL from the District Court of the Parish of St. Marys, *Voorhies,* J. J. A. *McClarty* and *Wilson,* for plaintiff and appellant. J. E. *King,* for defendant.

MERRICK, C. J. The history of these consolidated cases will be found in the 12th An. 871, they having been before the court last year, and having been re-

manded for a new trial. The second trial also resulted in favor of the defendant, *Tucker*, and the plaintiff, *Burris*, appealed.

*Burris* claims under an Act of Congress confirming the title of *Robert Martin*, to thirty arpents front by forty deep on each side of Bayou Bœuf in the parish of St. Marys, then described as the interior of Lafourche. See American State Papers, vol. 3, p. 509, No. 36, and Act of Congress, approved February 28th, 1823, chap. xv, sec. 1. *Robert Martin* conveyed to *W. C. C. Martin*, 27th December, 1823, and the latter conveyed to the plaintiff, *John Burris*, 20th January, 1848, and the Martin tract appears to have been surveyed and located in 1851.

The defendant claims 228 81–100 acres of the land claimed by *Burris* and within the Martin survey.

Defendant also claims by a confirmation to *William Knight*, and a sale from the latter to *Davis*, 28th August, 1808, and from *Davis* to *Garrett* the same day, and from the heirs of *Garrett* to defendant, *Tucker*, July 7th, 1854, after the institution of these suits.

We have had occasion to examine the Martin title to the Monteran tract, in the case of *Lawrence* v. *Burris*, just decided. But it is now objected that this title is fraudulent, and that there never was such a man as *Jacques Monteran*, and the pretended Galvez grant was a forgery. This matter was considered by the Secretary of the Interior and the Commissioner of the General Land Office, notwithstanding which, the survey was ordered to be made. It was, perhaps, in the power of the United States Government, by a judicial proceeding against *Robert Martin*, to have caused these confirmations to be annulled for fraud and forgery. This was never done ; but on the contrary, the department, after holding up the claims on the ground of suspicion for many years, at length directed the survey to be made. This case is unlike the case of *Phelps* v. *Hughey*, 1 An. 320, where the confirmation was made to one having no existence, and consequently the titles purporting to eminate from him, must have been forgeries.

In this case, the existence of *Robert Martin*, the confirmee, is not contradicted. Hence it is not necessary for the plaintiff to trace title to *Monteran*. See 4 An. 100 ; Ibid, 422, *Purvis* v. *Harmanson* ; *Thomas* v. *Philips*, 7 An. 546 ; 8 An. 106, *Riddle* v. *Ratliff*; 12 Peters, 458 ; 4 Howard, 461 ; 19 Howard, 209.

It is sufficient that he produces a regular title from *Robert Martin*, the original confirmee.

It becomes now necessary to consider defendant's title. The pretended confirmation to *William Knight* cannot avail the defendant, for the reason that the Commissioners reported against the claim, (American State Papers, vol. 2, p. 366, No. 462,) and it does not appear that *Knight* was entitled to a confirmation under the Acts of 1805 and 1813 ; 2d vol. Statutes at Large, p. 325, sec. 2 ; vol. 3, p. 121, 122. Had he or his vendees been entitled to a confirmation, they would doubtless have obtained an order of survey from the Commissioners of the Land Office, and have caused their claim to be surveyed.

In the absence of any action of the land office on *William Knight's* claim, we must presume it had not the requirements of the Acts of Congress in order to entitle him to a confirmation of 640 acres.

On the question of possession, it is clear that, until 1823, no one could possess the land adversely to the Government of the United States. It is not, therefore, necessary to consider the very conflicting testimony as to whether *Garrett* ever had possession. *Tucker's* possession, such as it was, commenced in 1847 or 1848, but he never acquired *Garret's* title, under which he now claims, until 1854, and

these suits were instituted in 1848, 1850 and 1851. *Garrett*, it is certain, was never in possession after 1816. The plea of prescription cannot, therefore, avail the defendant *Tucker*.

On the question of improvements the testimony is vague, but we think the revenues ought to be considered as compensated by the land which has been cleared, leaving to the defendant the right to remove his buildings.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged and decreed, that the said *John Burris* do recover and have judgment against the said *Thomas M. Tucker*, for said 228 81–100 acres of land in controversy, and being all of the land in the possession of the defendant, *Tucker*, within the lines of the survey of *A. L. Field*, as represented by the lines shaded in blue and the bayou on the plat of said surveyor, the upper of said lines crossing the bayou at a post indicated on the plat as the post marked D. And it is further ordered, that the said *Thomas M. Tucker* pay the costs of both courts, reserving to him the right to remove his dwelling house and other buildings, unless said *Burris* shall choose to keep the same, and reimburse the said *Tucker* their value and the price of the workmanship ; and to this end, it is ordered, that said *Burris* elect by writing, deposited with the Clerk of the lower court, within twenty days after the mandate in this case is filed in the lower court.